**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| PHILLIP HALL, ) | |
| ) | |
| Plaintiff, ) | Case No.  08 C 50116 |
| ) | |
| v. ) | Hon. Judge Reinhard |
| ) | |
| STERLING PARK DISTRICT and ) | Magistrate Judge Mahoney |
| STERLING PARK DISTRICT BOARD OF ) | |
| COMMISSIONERS, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

### I.    INTRODUCTION

Defendants STERLING PARK DISTRICT ("the District") and STERLING PARK

DISTRICT BOARD OF COMMISSIONERS ("the Board")(collectively, "Defendants") have

filed a Motion to Dismiss asking this Court to dismiss Count IV of Plaintiff PHILLIP HALL's

("Plaintiff") Complaint which arises under the Illinois Wage Payment and Collection Act,

820 ILCS §115/1 *et seq*. ("IWPCA").  Defendants argue that Plaintiff's IWPCA claims must

fail because Defendants never contracted to pay the wages Plaintiff seeks therein.

However, Illinois law makes clear that the IWPCA does not require an employee to

establish an enforceable contract to recover claims of unpaid wages and vacation.  To the

contrary, the statute mandates the payment of wages pursuant to either a "contract" <u>or</u> an

"agreement."  820 ILCS 115/2.  Furthermore, the term "agreement" is construed more

expansively than Defendants suggest.  *Landers-Scelfo v. Corporate Office Sys.,* 356

Ill.App.3d 1060, 1067-68 (2nd Dist. 2005).  As set forth herein and in Plaintiff's Complaint,

Defendants, by way of oral promises, written policies, and established practices, agreed to pay overtime and to compensate for Plaintiff his accrued and unused vacation. This is sufficient under the IWPCA, and Defendants' Motion to Dismiss should therefore be denied.[1]

## II.　　Legal Standard

Because Count IV is before this Court under principles of supplemental jurisdiction, Illinois law applies to the substantive claims and federal law applies to issues of procedure, including the pleading burden. *Wachter v. Indian Prairie Sch. Dist. #204,* 2006 U.S. Dist. LEXIS 4249 at *5-6 (N.D.Ill. 2/1/06), *citing Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 (1938). The U.S. Supreme Court recently issued two opinions which addressed federal notice pleading, and in so doing, re-affirmed that "fact-pleading" is not required in federal courts. *Bell Atlantic Corp. v. Twombly,* 2007 U.S. LEXIS 5901 at ***20-21 (2007); *see also, Erickson v. Pardus,* 2007 U.S. LEXIS 6814 (2007). To the contrary, the Court emphasized that specific facts are not necessary, and the pleading need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Erickson*, 2007 U.S. LEXIS at ***8 (citations omitted). In the wake of these opinions, the Seventh Circuit has summarized this burden as follows: "we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."

---

[1] Defendants also move to dismiss the Board from all counts of Plaintiff's Complaint. Plaintiff has agreed to voluntarily dismiss the Board, and will file an amended complaint removing the Board from the pleadings following disposition of this Motion.

*Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 619 (7th Cir. 2007) *quoting Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,* 499 F.3d 663, 667 (7[th]Cir. 2007). Furthermore, the Seventh Circuit has re-affirmed the dictate that all well-pled facts must be taken as true and all inferences drawn in favor of the non-movant. *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007).

### III.    ARGUMENT

### A.    Defendants Agreed to Pay Overtime for Non-Exempt Work and to Pay Vacation Benefits

The IWPCA is a remedial statute, enacted for the public good, and must be construed in favor of its beneficiaries. *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 U.S. Dist. LEXIS 11718, at *14-15 (N.D. Ill. June 28, 2004). Its purpose is to assist employees in seeking redress for an employer's wrongful withholding of wages and benefits. *Miller v. J.M. Jones Co.,* 198 Ill. App. 3d 151, 152 (4th Dist. 1990). The statute defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract **or agreement** between the two parties." 820 ILCS 115/2 (emphasis added). It mandates that the employer timely pay all earned wages pursuant to the contract or agreement, and that it pay an employee's accrued vacation upon the termination of his or her employment. 820 ILCS 115/3 and 115/5.

Here, Count IV asserts that Defendants have wrongly withheld Plaintiff's overtime pay and accrued and unused vacation benefits in violation of the statute. Contrary to Defendants' assertions, Plaintiff has adequately pled an agreement to pay him overtime and vacation benefits as mandated by the IWPCA. As an initial matter, "[t]he Act provides

an employee with remedies more expansive than a common law breach of contract action when it uses the words 'employment contract or agreement.'  To require an employee to have a valid, enforceable contract before invoking the Act would render the Act surplusage." *Zabinsky v. Gelber Group, Inc.,* 347 Ill.App.3d 243, 249 (2004).  Illinois case law has established that the legislature's inclusion of the term "agreement" in its definition was meant to convey a "broader" and "more expansive" meaning than is encompassed by traditional contract principles.  *Landers-Scelfo v. Corporate Office Sys.,* 356 Ill.App.3d 1060, 1067-68 (2nd Dist. 2005).  An 'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract."  Zabinsky, *supra*, *citing* Black's Law Dictionary 35 (abridged 5th ed. 1983); Restatement (Second) of Contracts § 3, Comment *a*, at 13 (1981).

These authorities make clear that the burden to establish an "agreement" is considerably lower than the burden to establish a contract.  In *Landers-Scelfo*, the Court found that an "agreement" need not be explicitly stated; rather, it may be manifested "by words or by any other conduct."   *Landers-Scelfo*, 356 Ill.App.3d at 1068, *citing, Restatement (Second) of Contracts* § 3, Comments a, b at 13 (1981).  The Court further noted that the defendant "could have manifested its assent to plaintiff's commission arrangement simply by paying her according to it."  *Id.*  Similarly, in *Zabinsky*, the Court found that plaintiff's testimony that defendant's agreement that "he would work the first quarter of 1990 in return for a bonus" was sufficient to meet this burden, despite the fact that his claim for breach of contract was barred by the statute of frauds.  *Zabinsky,* 347

4

Ill.App.3d at 249; *see also, Catania v. Local 4250/5050 of the Commus. Workers of Am.,* 359 Ill.App.3d 718, 725 (1st Dist. 1995)(Wage Payment Act created a cause of action distinct from a common law action for breach of contract.).

Under these authorities, it is clear that Plaintiff has adequately pled an "agreement" to pay overtime. In particular, Plaintiff was primarily employed to perform manual labor maintaining Defendants' golf course, including trimming trees, edging and raking bunkers, grading cart paths, applying pesticides and fertilizers, mowing the grass, planting flowers, and repairing the irrigation system. Complaint, at ¶9. These duties constituted the majority of his responsibilities, and are clearly functions which are normally considered "non-exempt." *see,* 29 C.F.R. §541.3 (manual laborers are normally nonexempt and entitled to overtime compensation). Furthermore, Plaintiff has pled that Defendants agreed to pay, and in practice actually did pay, overtime to its non-exempt employees. Complaint, at ¶¶12-13. These practices were memorialized in Defendants' Personnel Policy Manual, and were thus affirmatively stated and promised, independent of Defendants' obligations under the FLSA. *Id.* Similarly, Plaintiffs has also plead that Defendants specifically and personally promised Plaintiff that he would retain and be compensated for his accrued and unused vacation (which he could not take because of the hours he was required to work), including days in excess of the maximum allowed under the Personnel Policy Manual. Complaint, at ¶¶17-18.

The allegations in Plaintiff's Complaint amply establish that it was Defendants' stated policy and usual and customary practice to pay overtime to employees whose jobs required them to perform non-exempt work. Furthermore, they establish that Defendants

specifically and explicitly agreed that Plaintiff would retain his accrued and unused vacation benefits, including in excess of the allowed amount under Defendants' regular policies. These allegations, along with the reasonable inferences derived therefrom, are sufficient to establish an "agreement" under the IWPCA and the federal "notice pleading" standard. *Landers-Scelfo*, 356 Ill. App.3d at 1068 ("agreement" may be established by practice and custom, as well as by oral or written statements); *Zabinsky,* 347 Ill. App. 3d at 249; *Catania*, 359 Ill.App.3d at 725.  Furthermore, the IWPCA requires that earned vacation shall be paid to employees, in accordance with the employment contract or agreement, and that no employment contract or policy shall provide for forfeiture of earned vacation.  *Arrez v. Kelly Services, Inc.*, 522 F.Supp.2d 997, 1002 (N.D. Ill. 2007).

Moreover, since Plaintiff has adequately plead the existence of an agreement, dismissal of the complaint is both unwarranted and untimely.  The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.  *Triad Assocs., Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir. 1989).  In *Oplchenski v. Parfums Givenchy, Inc.*, 2007 U.S. Dist. LEXIS 10113 *13 (N.D. Ill. February 12, 2007), the defendant sought to dismiss plaintiffs' IWPCA claim, arguing the complaint failed to allege a contract or agreement.  However, the Court held that the plaintiffs need not plead the elements of their cause of action.  Furthermore, the "agreement" required under the IWPCA need not be a contract but may be based on a "manifestation of mutual assent."  Under these circumstances, the Court denied defendant's motion to dismiss in that "it would be premature to dismiss the plaintiffs' IWPCA claims at this stage of the pleadings. For pleading purposes, a full narrative is unnecessary.  Details come later, usually after

6

discovery. *Kolupa v. Roselle Park District*, 438 F.3d 713, 714 (N.D. Ill. 2006).

Likewise, in the case at bar, Plaintiff has met the pleading requirements and adequately pleaded a cause of action under the IWPCA, and should therefore be given an opportunity to develop the record with respect to Defendants' agreements and practices regarding the payment of overtime and vacation. For these reasons, Defendants' Motion to Dismiss should be denied.

**B.    The Disclaimer in Defendants' Personnel Policy Manual Does Not Negate an Agreement to Pay Overtime or Accrued Vacation Benefits**

Defendants' assertion that the disclaimer in their Personnel Policy Manual negates an agreement to pay overtime should be rejected. This "disclaimer," which is buried on page 9 of the 190-page employee manual, is intended to ensure an employee's status as an "at-will" employee and does not relate to overtime at all. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482 (1987)(defining "at-will" relationship and finding that progressive discipline procedures in policy manual conferred contractual rights which altered plaintiff's "at-will" employment status). The introduction of Defendants' Personal Policy Manual contains a paragraph with standard, boiler-plate language describing the "at-will" employment relationship:

> Nothing contained in these policies or any written or oral statement interpreting, explaining, or clarifying these policies is intended to create an *employment contract*, either express or implied, between the Park District and an employee. *Employees who do not have a separate, individual written employment contract are employed at the will of the district and are subject to termination at any time, for any reason not prohibited by statute, with or without cause or notice. At the same time, such employees may terminate their employment at any time and for any reason.*

Ex. C to Defendants' Motion, at 9 (emphasis added).  Significantly, the alleged "disclaimer" makes no mention of vacation or overtime, nor does it mention agreements under the IWPCA.  *Duldulao,* 115 Ill.2d at 493 (ambiguity or omission generally construed against the drafter of the document.)

The fact that Defendants have "disclaimed" that Plaintiffs' employment was terminable "at-will" is irrelevant to whether it agreed under the IWPCA to pay overtime and accrued vacation benefits.  Indeed, the IWPCA protects "at-will" employees.  *Zabinsky,* 347 Ill. App. 3d at 249 (IWPCA allowed enforcement of an agreement which was barred under a contract theory by the Statute of Frauds).  To hold otherwise would render the Act virtually meaningless, since it does not apply to union employees covered by a collective bargaining agreement,  (*see, Nat'l. Metalcrafters v. McNeil,* 784 F.2d 817, 824 (7th Cir. 1987), and employees who have private employment agreements can enforce the contract in the event of a breach.

Furthermore, Defendants' Personnel Policy Manual contains no disclaimers to negate the promises made therein.  In *Duldulao*, 115 Ill.2d at 482, the Court found that language in the employee handbook stating just the opposite - the policies in the handbook "are designed to clarify your *rights* and duties as employees" - entitled an employee to reasonably believe that the provisions contained therein were enforceable as an agreement or contract.  *Id.* at 491-192.

Here, Defendants' Personnel Policy Manual contains similar language to that in *Duldalao*:

> The Park District has prepared this Personnel Policy Manual as a reference guide for its employees.  It includes the District's minimum expectations regarding *your duties as an employee and describes the many benefits the District makes available to its employees*.

Ex. C to Defendants' Motion, at 9 (emphasis added).  Based upon this language, an employee of Defendants may reasonably believe that the policies, practices and customs outlined in Defendants' Personnel Policy Manual form the basis of the employment relationship between them, and that said policies, practices and customs may be relied upon by and be enforceable as to each of the parties unless expressly amended, expanded, revoked or suspended.

In addition, Defendants' reliance on *Skelton v. American Intercontinental University Online*, 382 F.Supp.2d 1068 (N.D. Ill. 2005) should be rejected.  In *Skelton*, the Court held that an employee handbook does not constitute a contract within the meaning of the IWPCA where the handbook contains an express disclaimer.  However, Judge Shadur of the Northern District of Illinois recently distinguished *Skelton*, finding that a general disclaimer of "at-will" employment does not negate an IWPCA agreement to pay overtime wages:

> And here I fear that I disagree with part of the opinion of my good friend Judge Kennelly in *Skelton* as to the effect of a handbook disclaimer.  What the handbook disclaimer does is to negate quite expressly a contract, but it doesn't doom a claim of an agreement short of a contract for purpose of the [IWPCA.]

*Bollie v. The Board of Trustees*, *et al.*, Case No. 07 C 1382 (N.D. Ill. 2007) (See Exhibit "A" attached hereto - Transcript of Proceedings on Defendant's Motion to Dismiss at p. 6.). Judge Shadur's reasoning is further supported by recent Seventh Circuit authority, which holds that promises in an employee handbook may be independently enforceable, even if the handbook as a whole does not create a contract altering an employee's at-will status. *Peters v. Gilead Scis., Inc.,* 533 F.3d 594, 599-600 (7th Cir. 2008).  Judge Shadur's reasoning is equally compelling in this case.  At most, the disclaimer impacts Plaintiff's at-will status, but it does not negate Plaintiff's claim of an agreement under the IWPCA. Finally, to the extent that Defendants rely on *Skelton* for the proposition that the IWPCA requires a contract as opposed to an agreement, this is clearly contrary to Illinois law, which controls.  *Landers-Scelfo*, 356 Ill.App.3d at 1068.

Similarly, the other case relied upon by Defendants, *Pautlitz v. Naperville*, 1991 U.S.Dist. LEXIS 2756 (N.D.Ill. 3/8/91), predates *Landers-Scelfo* and erroneously imposes a contract formation requirement on the IWPCA.  *See, Pautlitz*, 1991 U.S.Dist. LEXIS 2756 at *8 ("To the extent that the plaintiffs may claim overtime payment on the basis of a contract created by the Employee Handbook,  the express disclaimers on pages 2 and 11 that the contents of the Handbook create an employment contract would seem to foreclose such a claim.")  For this reason, *Pautlitz* is not an accurate statement of the law, and Defendants' reliance upon it is in error.

In summary, Defendants have provided no legal authority to support the claim that the disclaimer governing "at-will" employment relieves them of promises made with respect to overtime and vacation.

10

### C.    Plaintiff Has Alleged that Defendants Affirmatively Agreed to Pay Overtime and Vacation Independent of any Obligations under the FLSA and the IMWL

Defendants' assertion that the IWPCA does not provide an independent cause of action for the payment of overtime is misplaced and ignores the relevant allegations in Plaintiff's Complaint.   Contrary to this assertion, Defendants' stated agreement to pay overtime to employees who perform non-exempt work is separate and distinct from their obligations under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). Complaint, ¶¶12-13.  By so agreeing, and by making it a part of their usual customary practice, Defendants expressly offered and agreed to pay Plaintiff and other non-exempt employees overtime.   *Landers-Scelfo*, 356 Ill.App.3d at 1068.  This assent invokes the protections of the IWPCA, and is separate and distinct from obligations under the FLSA and IMWL.  Courts have held that similar promises may be enforceable, even where the promises overlap with benefits that are otherwise conferred by law.   *Peters v. Gilead Scis., Inc.,* 533 F.3d 594, 600 (7th Cir. 2008)(medical leave provisions of defendant's handbook could be enforceable independent of the Family Medical Leave Act).  Indeed, Defendants' promise that Plaintiff would earn and accrue vested vacation benefits, and ultimately be compensated for all accrued and unused vacation, exceeded the requirements of the FLSA and the IMWL, which govern only minimum wage and overtime, and contain no provisions relating to vacation.

In light of these allegations, Defendants' leading authority in support of this argument is distinguishable.  Deft's Mem., at p. 4, *citing Palmer v. Great Dane Trailers,* 2005 U.S. Dist. LEXIS 12747, *11-12 (N.D. Ill. July 2, 2005).  In *Palmer,* the plaintiff did not

plead a promise to pay overtime; rather, she attempted to bootstrap her IWPCA claims to her employer's general obligation to pay overtime under the FLSA: "Palmer has not alleged the existence of any agreement, contract, or CBA stating that GDLP promised to pay Palmer overtime.  Instead of alleging that an agreement requirement GDLP to pay Palmer overtime, Palmer alleges that the FLSA and IMWL bound GDLP to pay Palmer overtime." By contrast, in this case Plaintiff has alleged that Defendants affirmatively promised to pay overtime to employees who qualify as non-exempt, and in practice, it did so pay them. Complaint, ¶¶12-13.  For these reasons, *Palmer* is inapposite.

> ### IV.    Defendant Has Not Argued that Count IV's Claim for Unpaid Vacation Should Be Dismissed and the Argument is Therefore Waived

Although Defendants argue that Count IV should be dismissed in its entirety, the memorandum in support of their Motion to Dismiss discusses Plaintiff's claim for unpaid overtime exclusively, and makes no reference to his claim for unpaid vacation.  For this reason, the argument is waived, and even if the claim for unpaid overtime is dismissed, the claim for unpaid vacation must survive.  *DiChristofano v. Neiman Marcus Group, Inc.,* 2007 U.S. Dist. LEXIS 80131 *14 (N.D. Ill. October 30, 2007)(argument not made in Motion to Dismiss memorandum is waived).  Further, as stated above, Plaintiff has sufficiently pled his claim for unpaid vacation, and these monies are due and owing.

## V.     CONCLUSION

**WHEREFORE,** for the reasons set forth more fully above, Plaintiff has adequately

pled an "agreement" under the IWPCA to pay overtime and accrued and unused vacation

benefits, and therefore, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,


By:     /s/ Denise M. Kelleher
One of Plaintiff's Attorneys


Robin Potter, Esq.
Denise M. Kelleher, Esq.
Robin Potter & Associates, P.C.
111 East Wacker Drive - Suite 2600
Chicago, Illinois  60601
(312) 861-1800
**robinpotter@igc.org**
**dkelleher@robinpotter.org**

13

1

1

2

           IN THE UNITED STATES DISTRICT COURT

3              NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

4

5 JANIECE BOLLIE,                        ) DOCKET NO. 07 C 1382
                                         )
6                        Plaintiff,)
                                         )
7      vs.                               )
                                         )
8 THE BOARD OF TRUSTEES, et al.,         ) Chicago, Illinois
                                         ) July 31, 2007
9                        Defendants.) 9:00 o'clock a.m.

10

11

12        TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
                   MILTON I. SHADUR, Judge
13
APPEARANCES:
14
  For the Plaintiff:
15                        MS. ROBIN POTTER

16 For the Defendants:
                          MS. PAULETTE PETRETTI
17

18
                       JESSE ANDREWS
19        Official Court Reporter - U. S. District Court
                   219 S. Dearborn Street
20                 Chicago, Illinois  60604
                      (312) 435-6899
21

22            *     *     *     *     *     *

23

24

25

2

1          THE CLERK: 07 C 1382, Bollie vs. Board of Trustees.

2          MS. PETRETTI:  Good morning, your Honor.  Paulette

3   Petretti, P-E-T-R-E-T-T-I, on behalf of Waubonsee Community

4   College.

5          MS. POTTER:  Good morning, Judge.  Robin Potter on

6   behalf of the plaintiff.

7          THE COURT:  Good morning.

8          Well you know, largely because of my sense that not

9   much is typically added to the corpus juris by rulings on

10  12(b)(6) motions, I am going to deal with this orally.  And you

11  can sit down and listen, and then you can tell me what your

12  problems are with it.  Okay.

13         The first thing is on Count III, which has to do with

14  the claim for Fair Labor Standards Act retaliation.  On that

15  score I agree with what are really the vast majority of

16  circuits that don't require any formal external complaint in

17  order to support a retaliation claim.  The Skelton opinion that

18  supported part of Judge Kennelly's opinion in that case has, I

19  think, an admirable and persuasive statement on that score.

20  And as you know I had about 15 years earlier, in that Cuevas

21  case, ruled similarly that informal complaints suffices.

22         Now as I read it the defendant College doesn't really

23  dispute that.  Instead the argument is that Ms. Bollie didn't

24  even meet that requirement of an informal complaint.  But in

25  candor that overreads the significance of Bell Atlantic against

3

1 Twombly.

2          Let me make something clear on that.  I have trouble

3 with the Courts of Appeals that have tried to cabin that

4 opinion by saying, "Oh, well, it only involved an antitrust

5 case."  I think that the Court went out of its way to go beyond

6 that when they essentially overruled that one statement in

7 Conley against Gibson that all of us have been, you know, so

8 like a firmly-anchored 50 year old Supreme Court decision

9 turned out not to be.  And Justice Stevens I think the had the

10 right of it, but he was in dissent.

11          But having said that, you see, if you look at the

12 defendants' paragraph 17 -- let me get that in front of me:  It

13 says;

14      "Here, Plaintiff states nothing more than that she

15      complained to Mary Bates.  Mary Bates was the

16      supervisor who allegedly did not permit Plaintiff to

17      report overtime.  Although Plaintiff alleges she

18      complained to Bates, Plaintiff provides no facts to

19      support to the nature, the substance or timing of

20      those complaints."

21          Now one thing that Bell Atlantic against Twombly did

22 not do was to require the pleading of evidence.  I mean

23 pleading of fact and pleading of evidence are two very

24 different things.  Indeed, you know it's interesting.  If you

25 go to the Appendix of Forms which are attached to the Federal

4

1  *Rules of Civil Procedure, and you go to their form that is*
2  *satisfactory for a complaint, here is one:  Form 10, you know.*
3  *It says -- it gives you some idea of time.  "On June 1st" --*
4  *after the allegation of jurisdiction, "On June 1, 1936 in a*
5  *public highway called Boylston Street in Boston, Massachusetts*
6  *defendant C.D. or defendant E.F. or both C.D. and E.F.,*
7  *willfully or recklessly or negligently drove or caused to be*
8  *driven a motor vehicle against plaintiff who was then crossing*
9  *said highway."*

10         *Well, come on.  I mean you know they didn't -- they*
11  *weren't required to plead the facts that were involved.  They*
12  *pleaded what you might characterize as conclusory (although I*
13  *think, by the way, if you look in Webster's Third International*
14  *dictionary I don't think you'll find "conclusory," but that's a*
15  *side issue) but a needed one for the court.*

16         *Anyhow, the problem is if we now look at paragraph 18*
17  *of the defendant's motion.  What's interesting is that it talks*
18  *about further support of dismissal and "review of the Handbook,*
19  *where "Bates, as administrative supervisor, has the authority*
20  *to vary the workweek as necessary to perform duties of the*
21  *position in the most efficient and effective manner.' "Well,*
22  *that very vesting of authority in Bates makes her action that*
23  *of the College itself.  It doesn't matter it's direct rather*
24  *than vicarious responsibility.  So essentially the argument*
25  *that's made to try to knock that one out is just incorrect, and*

5

1  *I am going to deny that motion.*

2       *Now the next one, which is Count VI, is for FMLA*

3  *retaliation, where the defendant's position is that there is a*

4  *lack of causal connection.  As you know the Seventh Circuit has*

5  *established pretty much a bright-line rule that a four-month*

6  *gap between the exercise of FMLA rights and the adverse*

7  *employment action negates any inference of causality.  Or to*

8  *put it differently, you cannot draw an inference on causality*

9  *by reason of that temporal lag.*

10       *Now it's true that as the plaintiff asserts, a*

11  *temporal proximity, is not the only way to approve retaliation*

12  *issue.  But it seems to me on that score that the plaintiff's*

13  *effort fall back on McDonnell Douglas and its approach just is*

14  *not persuasive.  On that score, if you look at page 8 of the*

15  *response what's, said is:*

16     *"In the instant case, Ms. Bollie has met her burden*

17     *under the 'indirect method' [requirements of*

18     *McDonnell Douglas] by having plead: (1) that her FMLA*

19     *leave was relied on by Defendant as a negative factor*

20     *in terminating her employment."*

21       *Now that one I think fails, because that ipse dixit*

22  *in the Second Amended Complaint is not just enough.  There is*

23  *nothing that would give rise -- that's identified that would*

24  *give rise -- to an inference, which is what the plaintiff is*

25  *entitled to.  And therefore I am going to grant the motion to*

6

1 knock out Count VI.

2        Then count V, which is under the Illinois Wage

3 Payment and Collection Act, talks about -- and everybody agrees

4 on that -- about "employment Contract or Agreement."  Now the

5 claimed impact of that language is that an "Agreement" is less

6 demanding than a contract, otherwise the term wouldn't have

7 been used.  It simply would have said "employment contract."

8 And of course the cases support that.

9        Surprisingly, to me at least, both sides cited this

10 Illinois Catania case.  And here I fear that I disagree with

11 part of the opinion of my good friend Judge Kennelly in Skelton

12 as to the effect of a handbook disclaimer.  What the handbook

13 disclaimer does is to negate quite expressly a contract, but it

14 doesn't doom a claim of an agreement short of a contract for

15 purpose of the Illinois Act.

16        Now in that sense a paragraph, I think it's paragraph

17 48, of the Complaint deals with that.  And if you look at pages

18 11 and 12 of the plaintiff's response, that confirms that the

19 existence of an at will  relationship does not preclude

20 recovery under the statute.  If it did, you see, it would

21 require a contract.  At-will is the other side of the coin from

22 a contractual employment relationship.  And accordingly, that

23 one I am going to deny.

24        Now that then leaves only the question of the time

25 bar as to various claims.  As to those the statutes, you know,

7

1  they define the time.  I really do not understand, Ms. Potter,

2  the point that you have made about an entitlement to tolling

3  based on discussions about tolling that didn't give rise to an

4  agreement.  I mean how do you get tolling when -- as a matter

5  of fact, I would think that the inference is the other way

6  around.  That is, if there was a request for a tolling

7  agreement, and it got turned down, that would negate the idea

8  of some kind of equitable tolling.

9         I suppose the one potential difference is if somebody

10  stonewalled in terms of an answer until it was too late or

11  something like that, maybe you can have an equitable tolling

12  for the added period.  But I don't see that as being asserted

13  here.  So on the time bar, the only ruling that I have to make

14  is that the statutes statues apply.

15         So that then deals with the pending motion.  And tell

16  me now.  Where are you in terms of the discovery process and

17  the movement on this one toward the ultimate fate?  What is the

18  ultimate fate?  Either summary judgment, which as you know is

19  the bane of our existence, or a trial, which is a lot more fun.

20         MS. POTTER:  I would agree, your Honor.

21         MS. PETRETTI:  Your Honor, regarding discovery we

22  have exchanged 26(a) disclosures, and we have -- the defendant

23  has propounded interrogatories and served requests for

24  production of documents and notice for the deposition.

25         We've received from the plaintiff requests for

8

1  production of documents, and we received 114 requests to admit:

2  And your Honor, we just -- even though there may not be a limit

3  under Federal Rule 36, we have always looked upon the requests

4  to admit as a way to limit, you know, being bypassed or

5  authenticated or whatever for trial.  But these are really -- I

6  mean they are almost like a stream of consciousness set of

7  requests to admit.  And we would just say going forward we do

8  not want to be subjected to, you know, hundreds of requests to

9  admit throughout this litigation.

10        THE COURT:  Well, you know requests to admit are

11  stuck in an odd place when they are put in the discovery part

12  of the Rules of Civil Procedure, because requests to admit

13  really do not constitute part of discovery.  Instead they are

14  there to create a situation in which there is something that

15  ought to be admitted, but if not then proof of it at trial,

16  shifts fees.  That's the entire function of requests to admit.

17        Now that being true, that has always seemed to me to

18  pretty much define what ought to be the role and therefore the

19  scope of requests to admit.  That is, I have always thought of

20  them as having to do with particular facts that it would take

21  longer to prove up at trial, by then simply being able to read

22  to the jury the things that are essentially almost the

23  equivalent of a stipulation, you know.

24        MS. PETRETTI:  Right.

25        THE COURT:  When we get to a trial one of the things

9

1  that we have in the final pretrial order is a statement of

2  agreed facts.  That's essentially the notion of what would be

3  covered by requests to admit if properly framed, and if the

4  party is not, as I say, hedging or maybe waffling about the

5  thing.  Now I can't talk in the blind.  You know I don't know

6  what the scope is.  Saying that there are that many sort of

7  sounds suspicious, but I am not sure whether that necessarily

8  knocks them out.

9          MS. PETRETTI:  Right.  I guess just going forward I

10  would ask for some kind of limitation so that it's not just

11  open season.  You know we don't keep getting hit with requests

12  to admit.  I would ask that at least you know for --

13          THE COURT:  Is this one before Judge Cole?

14          MS. POTTER:  No.

15          MS. PETRETTI:  Well, he's our assigned Magistrate

16  Judge.

17          THE COURT:  I know he is your Magistrate Judge.

18  Well --

19          MS. POTTER:  Judge, I think it's somewhat premature.

20  Your Honor, if I might, there is no Rule 37, there is no

21  motion.

22          THE COURT:  I understand that.  I am not going to

23  rule on this.  All I am saying is that if you find yourself

24  somehow after conferring to impasse about that, I suppose that

25  you can file a motion that requests relief from the obligation

10

1  to respond to certain portions of the requests to admit.

2          MS. PETRETTI:  Right.  And I guess what I was looking

3  for maybe is just going forward with restrictions.  For

4  instance, that no party you know can serve the other side with

5  more than 125.

6          THE COURT:  For example, we have limited some

7  requests to 80.  And one size does not fit all in litigation.

8  You know the idea of choosing an arbitrary number (and it is

9  always arbitrary) -- 10 might be too many in some cases, and 50

10 might not be enough.  I don't know.

11          So the way to do that is if you have been served with

12 those, and if you find that some of them are harassing or

13 burdensome and really do not play the proper role that I have

14 tried to identify in general terms, come in on a motion, you

15 know saying, "We don't believe we ought to be required to

16 respond to these requests to admit."  Okay?

17          In the meantime, what do you think would make sense

18 for a next status?  Because as you know the purpose of this one

19 was to deal with the 12(b)(6) motion?

20          MS. POTTER:  Your Honor, if I may.  If you recall,

21 you did not -- even though we drafted a Rule 26 planning

22 meeting, it was not entered, but we kept on scheduling.  So we

23 tentatively plan to take the plaintiff's dep and the chief

24 decisionmaker in September, give or take a few -- we don't

25 totally agree on the dates yet.  And we staggered that and

1  staged it so that all of the Rule 34s would be produced --

2       THE COURT:  Okay.

3       MS. POTTER:  -- before then.  Because to the extent

4  that we are not already, we have honored an agreement.

5       THE COURT:  Well, suppose then that I give you maybe

6  a status at the end of September.  Would that seem to be right?

7       MS. POTTER:  Our plan and we hope that these two

8  deps, it's unusual maybe they may be the only ones we need.

9  And then Mr. DeRose and I will be ready for trial.

10      THE COURT:  Okay.  Let me give you any day in the

11 week of September 24th through the 28th, I can give you any

12 day.

13      MS. PETRETTI:  Any day is okay with me, your Honor.

14      MS. POTTER:  September 26th.

15      THE COURT:  All right.  Wednesday, September 26th at

16 9 o'clock then for status.  And we'll see if we can at that

17 point set a date for close of discovery.

18      MS. POTTER:  Thank you.

19      MS. PETRETTI:  Thank you, your Honor.

20      THE COURT:  Oh, and by the way, by my denying the

21 motion to dismiss those counts, you will need to file an Answer

22 to those.  And I suppose 14 days ought to be enough, shouldn't

23 it?

24      MS. PETRETTI:  Yes, your Honor.

25      THE COURT:  Okay.  I will give you 14 days for that.

12

1          MS. POTTER:   That's fine.

2          THE COURT:   Thank you.

3          MS. PETRETTI:   Thank you.

4      (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
       THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)

5
                      C E R T I F I C A T E
6
I HEREBY CERTIFY that the foregoing is a true and correct
7  transcript from the report of proceedings in the above-entitled
   cause.
8
   _____
9  JESSE ANDREWS, CSR
   OFFICIAL COURT REPORTER
10 UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF ILLINOIS
11 EASTERN DIVISION
   DATED: July 31, 2007
12

13

14

15

16

17

18

19

20

21

22

23

24

25