IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

PHILLIP HALL,                          )
                                       )
            Plaintiff,                 )        Case No. 08 C 50116
                                       )
    vs.                                )
                                       )        Magistrate Judge
STERLING PARK DISTRICT,                )        P. Michael Mahoney
                                       )
            Defendants.                )

**MEMORANDUM OPINION AND ORDER**

I.    INTRODUCTION

This matter is before the court based on the parties' joint consent to the exercise of

jurisdiction by a Magistrate Judge.  On August 4, 2009, Judge Reinhard transferred this case to

the Magistrate Judge for all further proceedings.  The court granted in part, and denied in part,

Defendant's motion for summary judgment on May 4, 2011.  After some additional fact

discovery, this case was set for a final pretrial conference.  The parties submitted a proposed

final pretrial order to the court on March 7, 2012.  In conjunction with the final pretrial order, the

parties each submitted motions *in limine* to the court.  Plaintiff submitted two motions, and

Defendants have submitted four.  The motions are fully briefed, and the court will now rule.

II.   BACKGROUND

Plaintiff, Phillip Hall, filed two lawsuits against Defendant, Sterling Park

District, that were consolidated by the court. The first complaint, filed on June 24, 2008,

contained four counts alleging violations of the Fair Labor Standards Act, 29 USC § 207, the

Illinois Minimum Wage Law, 820 ILCS § 105/3-4, and the Illinois Wage Payment Collection Act ("IWPCA"), 802ILCS § 115/2, and seeks back pay for overtime worked and compensation for unused vacation time. Plaintiff subsequently filed a two-count complaint on July 7, 2009 that seeks damages and equitable relief to redress alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). The court consolidated the cases in their entirety on October 7, 2009.

On September 30, 2010, Defendant filed a motion for summary judgment as to all counts in Plaintiff's complaints. The court granted in part and denied in part Defendant's motion in a Memorandum Opinion and Order on May 4, 2011. Based on the court's decision, Plaintiff's claims for uncompensated accrued vacation time under the IWPCA and for violations of the ADEA remained viable.

Plaintiff was hired as the Director of Golf Operations at the Emerald Hill Golf and Learning Center (hereinafter referred to as "Emerald Hill") around May 1, 1994. At the time, Plaintiff was 42 years old. Emerald Hill was a facility owned and operated by Defendant, Sterling Park District. The Park District is governed by a publicly elected five-member Board of Commissioners ("the Board"). Plaintiff's duties included oversight of Emerald Hill and its affiliated clubhouse, golf shop, restaurant, and banquet facilities. He supervised up to four full-time employees, and more than 30 total employees. Plaintiff's supervisor was Larry Schuldt ("Schuldt"), who was the Executive Director of the Park District.

Plaintiff's employment agreement was based on three-year contracts that would automatically renew unless either party notified the other within 90 days of the end of a stated term. Plaintiff's contract renewed on a number of occasions, and Plaintiff alleges he received

2

positive reviews during his first ten years of employment with Defendant. In November of 2005, Schuldt apparently decided not to renew Plaintiff's contract because of uncertainty about the direction the Park District was taking with regard to Emerald Hill. On November 18, 2005, Schuldt informed Plaintiff that he would be retained as an at-will employee and would receive a $1,000 per year (approximately 1%) raise. Plaintiff previously received three percent raises, and alleges that other employees received three percent raises during this time period. Schuldt reasoned that the one percent raise was based on his view that Plaintiff was performing well in only one of the three areas of his job.

After denying Plaintiff's written grievance regarding the non-renewal of his contract, the Board decided on January 16, 2006 to eliminate the positions of Director of Golf Operations and Assistant Golf Course Superintendent. The eliminated positions were replaced with the newly created positions of Golf Course Superintendent and Golf Operations Manager. Plaintiff was offered the opportunity to apply for the Golf Course Superintendent job, and did so, but he was not granted an interview. Aaron Heaton, a 23 year-old employee, was ultimately selected to fill the position without having submitted an application or being interviewed. Another 22-year-old employee, C.J. Wade ("Wade") was chosen for the position of Golf Operations Manager. Plaintiff was officially terminated in a letter dated March 23, 2006. The termination letter alluded to Plaintiff's performance, attitude, and inability to maintain respectful communications with his supervisor.

III.   DISCUSSION

The motions *in limine* filed by both parties relate to whether certain evidence should be admitted at trial. Generally, relevant evidence is admissible unless a statute or rule provides

otherwise. Fed. R. Evid. 402. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Evidence should only be excluded through a motion *in limine* if it is clearly inadmissible for any purpose. *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Generally, pre-trial motions to exclude evidence are disfavored. *Cox v. Prime Fin. Mortgage Corp.*, No. 05 C 4814, 2006 WL 1049948, at *1 (N.D. Ill. Apr. 20, 2006). The preferred practice is for courts to defer evidentiary rulings until trial so the court can properly resolve questions of foundation, relevance, and prejudice. *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2005 WL 289967, at * 1 (N.D.Ill. Feb.4, 2005). However, a motion *in limine* may serve to focus the issues of a trial where they properly exclude information that would be inadmissible, clearly prejudicial, or may serve to confuse issues and mislead the jury.

A.   Defendant's Motions *in Limine*

    1.   Defendant's Motion to Bar IMRF Documents and Damages

Defendant moves for an order barring at trial any testimony, evidence, or argument regarding documents from the Illinois Municipal Retirement Fund ("IMRF"), the amount of Plaintiff's alleged reduced IMRF pension benefit damages, or, in the alternative, barring a calculation of Plaintiff's alleged IMRF pension benefit damages based on his salary of $69,868.

4

Plaintiff wants to show at trial that his damages include the difference in IMRF pension benefits he would have received had he not been terminated by Defendant. Plaintiff identified certain exhibits that support his lost benefits claim, including an IMRF benefit plan booklet, an IMRF benefit statement, IMRF enrollment forms, and IMRF designation of beneficiary forms.

Defendant believes the proposed IMRF evidence from Plaintiff is inadmissible hearsay under Rule 802 of the Federal Rules of Evidence. Defendant also notes that Plaintiff has not identified an expert to testify as to the IMRF damage calculations, and that Rule 701 limits lay opinion testimony to opinions or inferences that are based on a witnesses' personal knowledge and not based on other technical or specialized knowledge. Fed. R. Evid. 701.

Hearsay is a statement made outside a current trial or hearing that is being offered in to evidence to prove the truth of a matter asserted. Fed. R. Evid. 801 (c). A statement may include oral or written assertions, including documents. Fed. R. Evid. 801(a). Plaintiff believes that the IMRF documents constitute hearsay statements because they were created by someone else–an IMRF employee–and are being offered to show the truth of the assertion that Plaintiff would have received a certain amount in pension benefits. Plaintiff argues that the documents are standard business records kept by the Defendant in the normal course of business. They were produced by the Defendant and show the regularly kept records of benefits owed to Defendant's employees. The court finds that the documents appear to fall under the "business records" exception found in Rule 803(6). Fed. R. Evid. 803(6). The records appear to have been produced by IMRF personnel, and kept by Defendant as a matter of course to keep track of the benefits owed to its employees. The evidence will not be excluded prior to trial based on Defendant's hearsay objection.

5

Defendant's stronger challenge to the IMRF evidence is that Plaintiff makes incorrect assumptions regarding the amount he would have been owed had his contract not been terminated. This challenge to Plaintiff's proposed evidence is two-pronged: (1) that Plaintiff's projections about his potential salary and future pension withdrawals were incorrect, and therefore skew his calculations; and (2) an expert knowledgeable in the technical process for calculating benefits under the IMRF would be required to testify under Rule 701.

As to the accuracy of Plaintiff's calculations, the Defendant theorizes that Plaintiff's position was eliminated and replaced by a new one with a salary of $55,000. The only way Plaintiff could have been retained as an employee would have been to obtain the $55,000 per year job, a fact that renders Plaintiff's IMRF calculations unreliable. The Defendant also argues that Plaintiff elected to begin receiving his benefits before he was eligible, which led to him receiving a reduced monthly amount and further complicates the benefits calculation. Plaintiff's theory on IMRF damages is based on his belief that Defendant's act of eliminating his position and re-creating a new one was all inextricably linked with the discriminatory motive that led to Plaintiff's termination. The same is true for Plaintiff's decision to receive his benefits early and at a reduced rate; he would not have made this choice if he had not been fired. These competing theories are more appropriately decided at trial. The jury will be appropriately instructed that it is Plaintiff's burden to prove his damages, and Defendant will have the opportunity to challenge the evidence and assumptions made by Plaintiff.

The court is however persuaded that the IMRF calculations in this case are not an appropriate subject for lay witness testimony under Rule 701. It is clear that the parties have diverging theories regarding the benefits Plaintiff would have been entitled to had his

employment with Defendant continued. The court finds that calculations about how the differing theories would affect the IMRF benefits require a technical or specialized knowledge. Were the Plaintiff and Defendant to present competing lay witnesses to present calculations before the jury, the risk of confusion or misleading information would be increased. The court finds that expert testimony on the subject of Plaintiff's claims of damages is likely to aid the jury, and would not prejudice the parties' abilities to present their theories.

For the foregoing reasons, Defendant's first motion *in limine* is denied. Plaintiff is given leave to add an expert witness to testify regarding Plaintiff's IMRF damages by April 6, 2012. The parties are given to April 27, 2012 to depose Plaintiff's witness. Defendant has until May 18, 2012 to disclose its own expert witness regarding IMRF damages, and the parties are given until June 8, 2012 to depose Defendant's expert witness.

2.     Defendant's Motion to Bar Alleged Comments About Age

Defendant's second motion *in limine* seeks to bar at trial any testimony, evidence, or argument regarding alleged comments made by Schuldt or Doug Jacobs ("Jacobs") about the ages of Plaintiff and two other employees. Defendant alludes to nine specific statements, or types of statements, that it believes should be excluded from trial. Defendant argues that the statements are inadmissible hearsay, irrelevant, or would unfairly prejudice Defendant and confuse the jury. The statements were made at different times, and by two different individuals. Some were directed at Plaintiff and some were directed at other employees. The court finds it helpful to discuss the statements in three categories: (a) remarks made by a non-decisionmaker (Jacobs) about someone other than Plaintiff; (b) remarks made by the decisionmaker (Schuldt) about someone other than Plaintiff; and (c) remarks made by the decisionmaker about Plaintiff.

7

Plaintiff alleges that Jacobs made a statement in 2004 that Wayne Pettorini, an employee of the Park District at the time, could not keep up with the crew because he was too "slow". As an initial matter, it is not clear that this statement shows animosity toward age. To the extent the comment has any probative value as to the question of whether Plaintiff was discriminated against by the Defendant, that value is outweighed by the potential for it to cause confusion or prejudice against the Defendant. Most notably, the statement was not made by a decisionmaker–namely, Schuldt. To the extent it was made by another executive in the presence of Schuldt, there is no evidence indicating that it was probative of Schuldt's reasoning for terminating Plaintiff. *See Weinert v. Village of Lamont Police Dept.*, 09 C 6889, 2012 WL 698352, at *5-6 (N.D. Ill. Mar. 1, 2012) (citing *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir.1984)). Reference to this statement could sidetrack the jury by raising questions about the meaning of a comment by a non-decisionmaker regarding someone other than the Plaintiff. The court grants Defendant's motion to exclude the Jacobs statement.

Plaintiff alleges that the following statements were made by Schuldt in reference to employees other than Plaintiff:

> (1) Schuldt to Richard Clark (former employee) in 2002[1]: "Well, what's an old guy like that doing still working here"; and
>
> (2) Schuldt about Wayne Pettorini (former employee) in 2004: "I'm not going to give him a wage increase for the coming year just because of his age."

---

[1]The parties dispute when this comment took place. Plaintiff testified it was in 2004. Defendants believe it was in 2002 based on Clark's own testimony by affidavit that he began experiencing health problems and had to leave his job around October of 2002. The court accepts Clark's account from his sworn affidavit.

Defendant believes these statements are inadmissible hearsay to which no exceptions apply. Defendant also argues that the statements are stray remarks that are not proximate in time and do not tend to show animosity toward age. Plaintiff believes the statements are relevant as background evidence of Schuldt's intent. *See West v. Ortho McNeil Pharm. Corp.*, 405 F.3d 578 (7th Cir. 2005). Behavior toward or comments directed at other employees in a protected group can serve as circumstantial evidence from which a jury might infer intentional discrimination. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). However, there must be a nexus between the alleged discriminatory remarks and the adverse employment decision. *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403 (7th Cir. 1996). The parties assign differing meanings to these statements, and therefore disagree as to whether the statements may help form a mosaic of circumstantial evidence.

The court will consider the context of the comments, and balance Plaintiff's right to present indirect evidence of discrimination with Defendant's concerns about putting misleading or potentially prejudicial stray remarks before the jury. *Gage v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 365 F.Supp.2d 919, 931 (N.D. Ill. 2005). Certainly it is not appropriate to allow Plaintiff to present evidence of any comment about age made by Schuldt to any person over an open-ended period of time as tending to show a discriminatory motive toward Plaintiff. The questions before the jury should remain focused on whether age was a factor in Plaintiff's termination, and not on whether Schuldt sometimes made age-related remarks. *See Gage*, 365 F.Supp.2d at 931.

Based upon the circumstances, the Schuldt comment about Richard Clark should be excluded from trial. Plaintiff's pleadings and summary judgment arguments have identified a

period beginning in 2003, after Plaintiff turned 50, as the time in which he began to notice that Schuldt's "previously favorable perception of Hall was changing because of Hall's age." (Pl.'s Resp. to Def's 2nd Mot. *in Limine*, Dkt. No. 129, ¶5.) Clark resigned due to health problems in late 2002, and stated that he never felt discriminated against based on age. The court finds it unlikely that this comment would be relevant under Rule 401, and any argument as to relevance is outweighed by the likelihood for confusion or prejudice.

The court also finds that the Pettorini comment should be excluded based upon its context and the probability that it would cause confusion. The parties each present plausible arguments as to the meaning of the statement. Plaintiff believes it pointedly shows age-related animus. Defendant will argue it shows the opposite–that Schuldt specifically *refused* to consider age in making an employment decision. Presenting this remark as evidence to the jury would inevitably lead to arguments about the comment's context, relevance, and intent. In light of the ambiguous nature of the comment, and the fact that it was not directed at Plaintiff, the court finds that could unnecessarily prolong the trial and distract the jury's focus from the questions they will be charged with answering.

The next set of comments are general allegations by two former employees of Defendant, Pat Dunphy and Sandra Wolf Dunn, that Schuldt referred to Plaintiff as an "old fart" or "old man" on six to eight occasions. The alleged comments are not tied to a specific time, place, or setting. Both Dunphy and Dunn were terminated in 2005, and the parties believe the remarks took place between 2002 and 2005. The court will not exclude the remarks through a motion *in limine*. The court will be in a better position to weigh the relevance against the potential for prejudice, as well as the foundation and the context of the remarks at trial. The court also finds

10

that the statements do not appear to be hearsay under Rule 801(c). The remarks are not likely to be offered for the truth of the matter asserted, but rather to show the mental state of the declarant. *See Gage*, 365 F.Supp.2d at 930. Again, this is a decision better reserved for trial.

The remaining five comments are all remarks that Plaintiff alleges Schuldt made about Plaintiff. They are described as follows:

> (1) Schuldt during a staff meeting in 2003 or 2004: "Well, I might have worked here the longest, but I'm not the oldest";
>
> (2) Schuldt during a staff meeting in February or March of 2004 on the topic of setting senior citizen rates: "Well, because you're the closest one here, let's ask the person who is closest to that age or nearest to that category";
>
> (3) Schuldt during a staff meeting in February or March of 2004: "We would like to talk to the elder statesman";
>
> (4) Schuldt during a golf outing after a nice golf shot by Plaintiff: "How does an old fellow like you do that?"; and
>
> (5) Schuldt during an annual review meeting after Plaintiff made a comment about not wanting to end up like Schuldt's father, "65 years old and digging ditches": "Well, we have to be careful because you old farts have age laws."

Because the comments were made by a decisionmaker about Plaintiff, and took place during the time period in which Plaintiff alleges Schuldt's treatment of him began to change, the court finds there to be a sufficient nexus between the remarks and Plaintiff's termination. Like the comments about Pettorini, the parties dispute the intent of the above comments. Regardless of intent, the fact that Schuldt brought up Plaintiff's age repeatedly is sufficient to raise a question of fact as to whether age was a factor in the decision to terminate Plaintiff. *Id.* Likewise, the comments are not being offered for the truth of the matter asserted, but instead as circumstantial evidence of Schuldt's motive or mental state. The court will not strike the statements as hearsay

11

at this point. Plaintiff's motion is denied as it relates to alleged comments Schuldt made about Plaintiff's age.

        3.      Defendant's Motion to Bar Evidence or Arguments Regarding the Terminations of Other Employees

Defendant's third motion *in limine* seeks to bar evidence or arguments regarding other employees that Plaintiff believes were terminated because of their age. Specifically, Plaintiff alleges that age was a factor in Defendant's decisions to terminate Wolf, Dunphy, Pettorini, and Clark. Behavior toward other employees in the protected group may be circumstantial evidence that would support an inference of discrimination. *Zafar v. Foley Lardner*, 552 F.3d 520, 529 (7th Cir. 2008). "Whether evidence of other acts of discrimination is relevant to an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388, 128 S.Ct. 1140, 170 L.Ed. 2d 1 (2008). Defendant argues that each separation of employment alluded to by Plaintiff had unique circumstances that had nothing to do with the employees' ages.

Pettorini and Clark each submitted affidavits indicating that they do not believe they were discriminated against based on age. Pettorini voluntarily retired in 2006, after Plaintiff was terminated, and states that Plaintiff is wrong regarding the allegations of discrimination against him. Clark voluntarily retired in 2002 due to health issues, and also disclaims the allegations of discrimination. Wolf stated in her deposition that she believes she was terminated for a reason other than age. She was 46 years old at the time of her termination, and was replaced by someone of the same age. Dunphy was terminated following an investigation into $12,000 of

missing inventory that he could not account for.  Dunphy had very recently turned 40 years old when he was terminated.

The court finds there to be no administrative findings, judicial findings, accusations, or direct testimony regarding age discrimination against employees other than Plaintiff.  The situations appear too attenuated to be relevant to Plaintiff's claims.  Allowing Plaintiff to introduce evidence as to other employees would inevitably lead to a series of mini-trials that would distract the jury and unnecessarily prolong the trial.  For the foregoing reasons, Defendant's third motion *in limine* is granted.  Plaintiff is prohibited from introducing evidence or argument at trial that Wolf, Dunphy, Pettorini, or Clark were terminated or discriminated against based on age.

4.      Defendant's Motion to Bar Evidence Regarding Defendant's Ability to Pay For Membership in PDRMA

Defendant is a member of the Park District Risk Management Agency ("PDRMA") risk pool.  Defendant has the ability to raise funds to pay for a potential judgment in this case, and those funds may be available through its participation in the PDRMA risk pool.  Courts usually exclude evidence of indemnification "out of a fear that it will encourage a jury to inflate its damages award" because it knows the government or some other entity is footing the bill.  *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998).

Plaintiff argues that the evidence regarding Defendant's membership in the PDRMA is relevant insofar as Defendant's stated nondiscriminatory reason for terminating Plaintiff was the need for reorganization due to financial constraints.  In *Lawson*, the individual defendants gave the impression that they would be personally liable for damages.  *Lawson*, 153 F.3d at 379.

13

Their attorney questioned the individual defendants about their personal assets, and asked the jury during closing arguments to consider the financial situation of the defendants prior to determining an award. *Id.* The Seventh Circuit held that the trial court erred by refusing to allow the plaintiff in *Lawson* to rebut the individuals defendants' testimony with evidence of indemnification. *Id.*

The court is not persuaded that the *Lawson* decision is applicable to this case. However, certain principles from the case inform the court's decision. It is also how the evidence has any tendency to make any fact of consequence in this case any more or less probable. Fed. R. Evid. 401. At the same time, the Defendant will not be allowed to present evidence or argue in front of the jury about its financial ability to pay a judgment. Defendant's motion is granted, and both parties are prohibited from presenting evidence, testimony, or argument before the jury regarding Defendant's ability to pay any judgment as determined by the jury.

A. Plaintiff's Motions in *Limine*

    1. Plaintiff's Motion to Bar Determinations by the Illinois Department of Labor and the U.S. EEOC

Prior to filing his suits Plaintiff filed claims with the Illinois Department of Labor ("IDOL") and the U.S. Equal Employment Opportunity Commission ("EEOC"). Both agencies performed investigations and ultimately dismissed the claims at the administrative level. Plaintiff now seeks to exclude from evidence or arguments any investigations and determinations made by the IDOL and EEOC.

The jury is charged with reviewing Plaintiff's case *de novo*. *Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 152 (7th Cir. 1985). The materials from the IDOL and

EEOC would not assist the jury where there has been no indication that the materials could provide any information that would not otherwise be available to the parties and the jury. *See Young v. James Green Management, Inc.*, 327 F.3d 616, 624-24 (7th Cir. 2003). When evaluating whether to allow evidence of a prior administrative decision in the context of a jury trial, it is important that the court use its discretion to avoid the risks of prejudice. *Tulloss*, 776 F.2d at 153 n.2.

The court sees no reason to admit the results or investigation files from Plaintiff's EEOC and IDOL claims, and finds that they could serve to confuse or prejudice the jury. Defendant did not respond to Plaintiff's motion, and have given no indication as to why the EEOC and IDOL evidence would be relevant. Therefore, Plaintiff's first motion *in limine* is granted.

2.     Plaintiff's Motion to Bar Evidence Regarding Overtime Claims Dismissed on Summary Judgment

The court partially granted Defendant's motion for summary judgment on May 4, 2011. The court dismissed some of Plaintiff's claims, including his claim that he was entitled to overtime pay because Defendant mis-classified him as an exempt employee. The court finds that any evidence, testimony, or argument relating to Plaintiff's claims that were dismissed at summary judgment is not relevant to the remaining claims before the jury. The information would only serve to confuse the jury and prolong the trial by delving into matters that do not relate to Plaintiff's surviving claims. Defendant has expressed no objection to Plaintiff's motion. Therefore, Plaintiff's second motion *in limine* is granted.

15

IV.    CONCLUSION

Defendant's first motion *in limine* is denied.  Plaintiff is given leave to add an expert witness to testify regarding Plaintiff's IMRF damages by April 6, 2012.  The parties are given to April 27, 2012 to depose Plaintiff's expert witness.  Defendant has until May 18, 2012 to disclose its own expert witness regarding IMRF damages, and the parties are given until June 8, 2012 to depose Defendant's expert witness.  Defendant's second motion *in limine* is granted, in part.  Defendant's third and fourth motions *in limine* are granted.  Plaintiff's first and second motions *in limine* are granted.


ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT


DATE: March 28, 2012